**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ADRIAN LACEY,                                   :

     Petitioner,                            :
                                                   CIVIL ACTION NO. 15-0349-KD
vs.                                             :
                                                   CRIMINAL NO. 13-0112-KD
                                                :
UNITED STATES OF AMERICA,
                                                :
     Respondent.

## REPORT AND RECOMMENDATION

This cause is before the undersigned for entry of a report and recommendation,

pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R), following a

remand by the Eleventh Circuit Court of Appeals for further proceedings—that is, an

evidentiary hearing—in light of the Supreme Court's recent decision in *Garza v. Idaho,*

139 S.Ct. 738, 203 L.Ed.2d 77 (2019). (*Compare* Doc. 285, at 1-2 ("[T]he [Supreme] Court

held that the presumption of prejudice applies to the failure of defense counsel to carry

out his client's request to appeal 'regardless of whether the defendant has signed an

appeal waiver.' *Id.* at 742. Lacey, despite having signed such an appeal waiver, contends

that he instructed his counsel to appeal. Whether he did so is a contested issue of fact

that entitles him to an evidentiary hearing in the district court on his motion under 28

U.S.C. § 2255. *See Aron v. United States,* 291 F.3d 708, 715 (11th Cir. 2002).") *with* Doc.

286, at 2 (Chief District Judge Kristi DuBose's April 12, 2019 referral of this matter to the

undersigned to conduct an evidentiary hearing on Lacey's claim of ineffective assistance

of counsel on account of defense counsel's failure "to file a Notice of Appeal as

requested.")). The undersigned conducted an evidentiary hearing on July 23, 2019, and following consideration of all relevant pleadings in this case and *United States v. Lacey,* Criminal No. 12-0046-KD, as well as the evidentiary hearing testimony of Adrian Lacey, together with the arguments of counsel, it is recommended that Petitioner's § 2255 motion be **DENIED** on the sole issue of whether trial counsel was constitutionally deficient in failing to file an appeal as expressly directed.

## FACTUAL BACKGROUND

On May 30, 2013, Lacey was indicted on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Doc. 1, Count One, at 1-3); eleven counts of wire fraud in violation of 18 U.S.C. §§ 1343 & 2 (Doc. 1, Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20 & 22, at 3-4, 4-5, 5-6, 7, 8, 9, 10-11, 11-12, 12-13 13-14 & 15); and eleven counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) & 2 (Doc. 1, Counts 3, 5, 7, 9, 11, 13, 15, 17, 19, 21 & 23, at 4, 5, 6, 7-8, 8-9, 10, 11, 12, 13, 14 & 15-16). By superseding indictment returned on November 20, 2013, more "over acts" were alleged in support of Count One charging conspiracy to defraud the United States (*see* Doc. 135, at 1-4) and, as well, Petitioner was charged with five more counts each of wire fraud and aggravated identity theft (*see id.* at 4-9). In toto, therefore, Adrian Lacey was charged with one count of conspiracy to defraud the United States, 16 counts of wire fraud, and 16 counts of aggravated identity theft. (Doc. 135.)[1]

---

[1]     The charges in this case involved a scheme by Lacey to file fraudulent tax returns (*see* Doc. 135). Lacey admitted during the July 23, 2019 evidentiary hearing that he participated in this fraudulent scheme while incarcerated in federal prison following a guilty plea to submitting a fraudulent claim in connection with the BP oil spill. *See United States v. Lacey,* Criminal No. 12-0046-KD. The prior case establishes Lacey's familiarity with the federal court system. Indeed, the sentencing transcript in this prior criminal case attests to Lacey's lengthy criminal history. *See id.,* Doc. 64, at 25-26 ("[I]n your case, your criminal history involves a lot of drugs. It involves carrying (Continued)

On February 18, 2014, Adrian Lacey entered a counseled guilty plea to Counts One, Two and Three of the superseding indictment, Count One charging conspiracy to defraud the United States in violation of 18 U.S.C. § 371, Count Two charging wire fraud (on May 6, 2012) in violation of 18 U.S.C. §§ 1343 & 2, and Count Three charging aggravated identity theft (on May 6, 2012) in violation of 18 U.S.C. §§ 1028A(a)(1) & 2. (*See* Doc. 172; *compare id. with* Doc. 174.)

The final PSR reflects that based on a total offense level of 28 and a criminal history category of V, the guideline range of punishment was 130 to 162 months. (Doc. 216, at 23). This document also reflected that a 24-month mandatory consecutive sentence was due to be imposed. (*Id.*). The government filed a motion for downward departure on November 13, 2014, therein requesting that the Court depart downward from the low end of the guidelines by some 48 months. (Doc. 227). At sentencing, on November 14, 2014, the government's motion for downward departure was granted (Doc. 229) and Adrian Lacey was sentenced to a total custodial term of 106 months (*see* Docket Sheet, Minute Entry for November 14, 2014), consisting of 60 months as to Count 1, a concurrent term of 82 months as to Count 2, and a consecutive term of 24 months as to Count 3 (Doc. 232, at 2).[2] This

_____

a pistol, giving false names to law enforcement, and then you get the federal conviction when you're a very young man. You get five years. Then you come out, and three times the judge kept giving you chances, time after time after time. And then you serve your time, you get out; within six weeks, you're defrauding the federal government. So what that tells me is, when I'm considering the factors, I must consider that you have a very high likelihood of recidivism."); *compare id. with* Doc. 216, at 16-17 (final presentence investigation report reflects Lacey's January 8, 2002 federal conviction for possession with intent to distribute cocaine, for which he received a 63 month sentence, and also further reflects three revocations of supervised release)).

[2]     The sentence as to Count 2 (82) months was ordered to run concurrent to the 60-month sentence as to Count 1 and the 24-month sentence as to Count 3 was ordered to run consecutive to the Count 1 and 2 sentences (thus, 82+24=106).

(Continued)

106-month sentence was ordered to run concurrently, beginning on November 14, 2014, with the custodial sentence imposed in Criminal No. 12-00046. (*Id.*)[3] On the date of sentencing, November 14, 2014, Lacey filed a notice of non-appeal. (*See* Doc. 230).

On July 6, 2015, Adrian Lacey concurrently filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) (Doc. 245) and a motion to vacate (Doc. 246). The motion to reduce sentence was denied on July 14, 2015. (Doc. 248). Lacey was ordered to file a motion to vacate utilizing this Court's form (Doc. 250), which Petitioner did on August 17, 2015 (Doc. 251). Lacey later amended his motion to vacate on two occasions. (*See* Docs. 258-59, 261-62 & 264-65). One of the issues raised by Lacey in his motion to vacate, as twice amended, was that his attorney was constitutionally ineffective in failing to file a direct appeal on his behalf, as requested. (*See* Doc. 271, at 7, citing Doc. 258)[4]. Magistrate Judge Bert. W. Milling, Jr., entered a report and recommendation on March 28, 2016 that Lacey's motion to vacate be denied (Doc. 271)[5] and this report and recommendation was adopted as the opinion of the Court on May 2, 2016 (Docs. 272 & 273.) Lacey appealed. (Doc. 274).

---

[3]     Counts 4 through 33 of the superseding indictment were dismissed on motion of the government. (*See* Doc. 232, at 1).

[4]     Lacey also contended that he was subject to double jeopardy (or double counting) with respect to the sentence he received (*see id.* at 3-6) and that his attorney provided ineffective assistance in failing to object to the six-level enhancement of his sentence under U.S.S.G. § 2B1.6 (*see id.* at 7-8).

[5]     In relevant measure, the report and recommendation reads as follows: "Lacey next claims that his attorney was ineffective in not filing an appeal on his behalf. The evidence shows that, on November 14, 2014, Petitioner signed and filed a Notice of No Appeal (Doc. 230). That notice indicates that Lacey had been instructed by the Court and his attorney that he had a right to appeal, but that he declined to do so (Doc. 230). Petitioner's attorney, Sid Harrell, also signed the form, indicating his belief that Lacey's decision was knowing and voluntary. In light of this pleading, Petitioner's claim that his attorney rendered ineffective assistance in not filing an appeal is without merit." (Doc. 27, at 8).

On February 13, 2019, a panel of the Eleventh Circuit Court of Appeals issued a decision affirming the judgment of this Court and finding that this Court did not abuse its discretion in denying Lacey's motion to vacate without conducting an evidentiary hearing directed to the issue of whether Petitioner was denied effective assistance of counsel on account of his trial counsel's failure to file a Notice of Appeal. (Doc. 284). However, by mandate issued on April 2, 2019, the same Eleventh Circuit panel vacated both its February 13, 2019 judgment and opinion and this Court's decision denying Adrian Lacey's motion to vacate, filed in accordance with 28 U.S.C. § 2255, and remanded the case for further proceedings in light of the Supreme Court's recent decision in *Garza v. Idaho,* 139 S.Ct. 738, 203 L.Ed.2d 77 (2019). (*See* Doc. 285, at 1-2):

> [T]he [Supreme] Court held that the presumption of prejudice applies to the failure of defense counsel to carry out his client's request to appeal "regardless of whether the defendant has signed an appeal waiver." *Id.* at 742. Lacey, despite having signed such an appeal waiver, contends that he instructed his counsel to appeal. Whether he did so is a contested issue of fact that entitles him to an evidentiary hearing in the district court[6] on his motion under 28 U.S.C. § 2255. *See Aron v. United States,* 291 F.3d 708, 715 (11th Cir. 2002).

(*Id.* (footnote added)). And, on April 12, 2019, Chief United States District Judge Kristi K. DuBose referred this matter to the undersigned to conduct an evidentiary hearing on

---

[6]     *Cf. Garza,* 139 S.Ct. at 747 ("So long as a defendant can show that 'counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken,' courts are to 'presum[e] prejudice with no further showing from the defendant of the merits of his underlying claims.' Because there is **no dispute here that Garza wished to appeal**, a direct application of *Flores-Ortega*'s language resolves this case." (citations omitted; emphasis supplied)); *see also id.* at 743 ("Shortly after sentencing, Garza told his trial counsel that he wished to appeal. In the days that followed, he would later attest, Garza 'continuously reminded' his attorney of this directive 'via phone calls and letters,' and Garza's trial counsel acknowledged in his own affidavit that Garza had 'told me he wanted to appeal the sentence(s) of the court[.]'" (citations omitted)).

(Continued)

Lacey's claim of ineffective assistance of counsel on account of defense counsel's failure "to file a Notice of Appeal as requested." (Doc. 286, at 2).

An evidentiary hearing was conducted on July 23, 2019. (*See* Docs. 291-92.) During this hearing, only Adrian Lacey testified. (*See id.*) Lacey testified that immediately following his sentencing on November 14, 2014, a proceeding during which certain enhancements were applied and Petitioner received a 106-month sentence (following his receipt of a 48-month downward departure for his cooperation)[7] and during which he was advised by the Court that he had fourteen (14) days to file a notice of appeal (*see* Doc. 255, at 13-14 ("THE COURT: . . . You have 14 days to file your notice of appeal. And, Mr. Lacey, you need to talk with your attorney about what your appeal rights are. If you choose not to appeal, then you need to file a Notice of Non-Appeal. Do you understand? THE DEFENDANT: Yes, ma'am."),[8] he spoke with his attorney, Sid Harrell, in the "bullpen" or "hold" and told him (Harrell) to appeal his sentence. Lacey specifically recalled during cross-examination that

---

[7]    The Court explained to Lacey at the beginning of the sentencing proceeding that given his criminal history category of V and the offense level of 28, he was facing a guidelines sentence of 130 to 162 months as to Counts 1 and 2, as well as a 2-year sentence with respect to Count 3 to run consecutive to the Count 1 and 2 sentences; the Defendant voiced no objection to these calculations. (Doc. 255, at 2.) As well, it became apparent immediately thereafter that the Government was requesting a downward departure of 48 months from the low end of the guidelines based upon Lacey's cooperation. (*Id.* at 3; *see also id.* at 3-4 (Court performed the calculation for Lacey's benefit, 130-48=82)). Therefore, it should have been readily apparent to the Defendant that he was facing the prospect of a 106-month sentence (that is, an 82- month guideline sentence as to Counts 1 & 2 and a 24-month consecutive sentence as to Count 3). (*Compare id. with id.* at 2).

[8]    As the record reflects, these were the parting words the Court had for Lacey and Lacey specifically informed the Chief Judge that he understood what she was telling him. (*Id.*). That Lacey possessed the ability and experience to understand the Court's parting words is clear from earlier comments of the Court. (*See id.* at 12 (""You're a smart man, and I don't know why you keep using your intelligence to end up here. I can imagine what you would do if you harness and use that legally in a productive manner. It's not often that I get defendants as smart as you, and it's too bad that you don't choose to use it in a legal way.")).

(Continued)

he told Harrell to appeal the sentence because he did not get credit for the time served when he was transferred back to this District, pursuant to a writ, to answer the underlying criminal charges in this case, but, instead, his sentence was simply ordered to run concurrent to the sentence in Criminal No. 12-0046-KD,[9] from the date of sentencing.[10] According to Lacey, his attorney handed him a form and told him to sign it and that the sentence was going to be appealed. Lacey stated that he did not actually read the form he signed, but simply signed it where indicated by Harrell, because he was "discombobulated" by the sentence (106 months) he received and the Court's failure to give him credit for some of the time he had already served with respect to Criminal No. 12-0046-KD. The form

---

[9]     In Criminal No. 12-0046-KD, Lacey filed a *pro se* notice of appeal on December 28, 2012, *id*. at Doc. 37, eleven days after his December 17, 2012 sentencing, *compare id. with id.* at Doc. 64 (sentencing hearing transcript); *see id.* at Doc. 35 (judgment signed by sentencing judge on December 26, 2012 and docketed on December 27, 2012). At the tail end of the sentencing proceeding on December 17, 2012, the Court simply informed Lacey that he had "14 days to file [a] notice of appeal." (Doc. 64, at 28.) Additionally, during that sentencing, the Court referenced Lacey's obvious intelligence given his role in helping other individuals file false BP claims. (*See id.* at 25 ("In any event, you're even in a higher role than that because you were helping all these people do this, and you are apparently brighter than most of the people that have come through here who have filed these claims. So somebody like you is probably necessary in getting a lot of these fraudulent claims filed.")). More evidence of Petitioner's intelligence is also contained in that sentencing transcript. (*See id.* at 14-15 (Court's citation to letters received from Lacey in which he stated he had obtained while in prison both a real estate appraiser's license and a P10 letter allowing him to file tax returns for other individuals)).

[10]     The record clearly establishes that both prior to sentencing, in a sentencing memorandum (*see* Doc. 228), and during sentencing (*see* Doc. 255, at 4-5 & 5-9), Lacey's trial counsel requested the Court to "run" his client's sentence concurrent with the sentence imposed in Criminal No. 12-0046-KD (*see id.*), a request that the Government opposed (Doc. 255, at 5). Thereafter, Lacey was extended the opportunity to address the Court and stated only that he was requesting the Court to run "***some*** of [his] sentencing with [his] previous sentence[.]" (*Id.* at 9 (emphasis supplied)). And, of course, this is exactly what happened, as the Court ordered the 106-month sentence to run concurrent with Lacey's sentence in Criminal No. 12-0046-KD "starting today[.]" (*Id.* at 11; *see also id.* at 12 ("This sentence is to run concurrently starting today with the sentence the defendant is presently serving in 12-46."))).

(Continued)

signed by Lacey on November 14, 2014,[11] of course, was a Notice of No Appeal (*see* Government's Exhibit 1), on which the following language appears before Petitioner's signature: "I have been advised by the Court and by my attorney of my right to appeal my conviction and sentence. I have consulted with my attorney, who has explained the advantages and disadvantages of taking an appeal. I have had sufficient time to consider my options and require no further explanation. After consideration, it is my desire to inform the Court that I do not wish to take an appeal." (*Id.*)[12].

Lacey testified that he told his mother and the mother of his daughter that he wanted to appeal a "little" after sentencing but could not recall the exact date(s) he revealed this information to these individuals. According to Petitioner, his mother called Harrell about the appeal and was told that the appeal was being worked on[13] and that he wrote Harrell a letter about the appeal.[14] It was not until five or six months after sentencing, by Lacey's

---

[11]     During the evidentiary hearing, Lacey confirmed that the signature on the form was his signature.

[12]     Lacey testified during the evidentiary hearing that this language was fully understandable. He also testified that it is not necessarily his normal custom and practice to not read documents he is asked to sign but that he did not read this form because of his discombobulation over the Court's imposition of the 106-month sentence.

This same form contains Sid Harrell's November 14, 2014 signature following this language: "I affirm that, as counsel for Defendant, I have fully advised my client of the advantages and disadvantages of an appeal, given the facts and circumstances of this case, its procedural history, and the sentence imposed. I have had sufficient time to consult with my client to determine whether my client's decision is knowing and voluntary. It is my opinion that my client's decision to take no appeal is both knowing and voluntary." (*Id.*)

[13]     According to Petitioner, he had his mother and the mother of his daughter call Harrell because Harrell's office did not accept collect calls.

[14]     Petitioner was unable to pinpoint a date (not even to the month) when he penned the letter to Harrell and did not offer a copy of the letter into evidence at the evidentiary hearing. Petitioner testified that he did not retain a copy of the letter he sent to Harrell.

(Continued)

estimation,[15] that he learned from the mother of his daughter that she was told by Harrell's office that he signed a notice of non-appeal. It was Lacey's testimony that after learning this information from his daughter's mother,[16] he took some time to research his case before filing his motion to vacate.

As the record reflects, Petitioner initially filed his motion to vacate on or about June 29, 2015 (*see* Doc. 246, Attached Memorandum in Support of § 2255 Motion, at 8) and because he did not file his motion to vacate on this Court's form, he complied with this Court's order dated July 31, 2015 (Doc. 250) and filed his motion to vacate on this Court's form on August 12, 2015 (Doc. 251, at 13). Both in his initial pleading (Doc. 246) and in his motion filed on this Court's § 2255 form (Doc. 251), Lacey asserted only that his attorney was constitutionally ineffective in failing "to object to the PSI findings of Double Jeopardy ***and [in] advis[ing] petitioner he had no appealable issues to object to at sentencing or on direct appeal***." (*Compare* Doc. 246, Attached Memorandum in Support of § 2255 Motion, at 1 *with* Doc. 261, Attached Memorandum in Support of § 2255 Motion, at 1 (emphasis supplied)). It was not until October 21, 2015, that Lacey asserted for the first time that his attorney provided ineffective assistance in failing to file a direct appeal after being told by Lacey that he wished to appeal his sentence. (*See* Doc. 258, at 3 (motion to supplement dated October 21, 2015)).

> Petitioner avers that his counselor Sid Harrell failed to file a direct appeal after Lacey told counselor that he wished to appeal his sentence. *See Roe v. Flores-Ortega,* 528 U.S. 470, 145 L.Ed.2d 985 (2000). Counselor had petitioner sign a notice to appeal form right after being

---

[15]     This was Lacey's "first" estimation on direct examination; this initial estimation was "changed" to 3 to 4 months on redirect examination.

[16]     Neither Lacey's mother nor his daughter's mother testified during the evidentiary hearing.

sentenced. However[,] when petitioner called to the Eleventh Circuit, the clerk told him he had no pending NOA.

Petitioner told counselor that the court did not give him time served for being in the county jail while on a federal writ.

Counselor told petitioner that he would see that it gets taken care of and asked the petitioner to sign a form. This was done after sentencing in the holding cell at the courthouse.

Petitioner told his kids['] mother and his own mother that his attorney was going to file to get him the 10 months he had already served prior to being sentenced. Counselor failed to file a direct appeal after the petitioner advised him he did not get time served while being on federal writ. Had counselor filed the Notice of Appeal after petitioner signed the form, petitioner could have later amended his direct appeal with the Double Jeopardy or Double Counting claim.

Petitioner suffered prejudice as a result of counselor's deficient performance.

(*Id.* at 1-3).

## CONCLUSIONS OF LAW

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The scope of the evidentiary hearing in this case was limited to whether Lacey is entitled to relief under *Garza v. Idaho, supra,* on the basis of that he has established that he expressly instructed his attorney, Sid Harrell, to file a notice of appeal. In other words, because *Garza* presumes prejudice where an attorney performs deficiently in failing to file a notice of appeal despite

the Defendant's express instructions and regardless of whether the Defendant signed an appeal waiver, the pivotal question for this Court to answer, as framed by the Eleventh Circuit panel, is whether Lacey instructed his attorney to appeal his sentence.

Even though *Garza* presumes prejudice under certain circumstances, the parties should first recall that, in general, to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").[17] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be

---

[17] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

(Continued)

proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct.

1295, 152 L.Ed.2d 208 (2002).[18]

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[19] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12,

2011) (internal quotation marks and citations omitted; footnote added), *cert. denied,* 565

U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373

Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an

ineffective assistance claim requires the petitioner to show that, considering all the

circumstances, his attorney's representation fell below an objective standard of

reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar

or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's

performance is highly deferential, and the court must eliminate the distorting effects of

hindsight and evaluate performance from the attorney's perspective at the time the

---

[18]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[19]    In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

In *Garza v. Idaho,* the Supreme Court specifically held that "the presumption of prejudice recognized in [*Roe v.*] *Flores-Ortega*[, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)[20]] applies regardless of whether a defendant has signed an appeal waiver." 139 S.Ct. at 749; *see also id.* at 742 (same).[21]

> This ruling follows squarely from *Flores-Ortega* and from the fact that even the broadest appeal waiver does not deprive a defendant of all appellate claims. Accordingly where, as here, an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed "with no further showing from the defendant of the merits of his underlying claims."

---

[20]    In *Flores-Ortega,* the Supreme Court "held that when an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed 'with no further showing from the defendant of the merits of his underlying claims.'" *Garza,* 139 S.Ct. at 742, quoting *Flores-Ortega,* 526 U.S. at 484, 120 S.Ct. 1029.

[21]    Before performing its analysis, the Supreme Court reiterated that "'[f]iling [] a notice [of appeal] is a purely ministerial task that imposes no great burden on counsel[,]'" 139 S.Ct. at 745 (citation omitted) and went on to stress that "filing a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative." 139 S.Ct. at 746; *see also id.* ("A notice of appeal also fits within a broader division of labor between defendants and their attorneys. While 'the accused has the ultimate authority' to decide whether to 'take an appeal,' the choice of what specific arguments to make within that appeal belongs to appellate counsel.").

*Id.* at 749-50 (citation omitted); *see also id.* at 747 ("[W]e reaffirm that, 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal,' with no need for a 'further showing' of his claims' merit, regardless of whether the defendant has signed an appeal waiver." (internal citation omitted)). As recognized in *Garza,* this "rule[/ruling] does no more than restore the status quo that existed before counsel's deficient performance forfeited the appeal, and it allows an appellate court to consider the appeal as that court otherwise would have done—on direct review, and assisted by counsel's briefing." *Id.* at 749.

*Garza*, of course, also recognized that in order for the presumption of prejudice to "take hold," a Petitioner like Lacey must first establish that his attorney's "'constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken[.]'" 139 S.Ct. at 747 (citation omitted); *see also id.* ("Because there is **no dispute here that Garza wished to appeal**, a direct application of *Flores-Ortega*'s language resolves this case." (citations omitted; emphasis supplied)); *see id.* at 743 ("Shortly after sentencing, Garza told his trial counsel that he wished to appeal. In the days that followed, he would later attest, Garza 'continuously reminded' his attorney of this directive 'via phone calls and letters,' and Garza's trial counsel acknowledged in his own affidavit that Garza had 'told me he wanted to appeal the sentence(s) of the court[.]'" (footnote omitted)). And, as made clear above, Lacey must establish by a preponderance of the evidence that he expressly instructed Sid Harrell to file an appeal in this case despite having signed an

appeal waiver.[22] *See, e.g., Demar, supra,* 228 Fed.Appx. at 950. For the reasons set out below, the undersigned recommends that the Court find that Petitioner has not done so.

Lacey testified during the evidentiary hearing that immediately following his sentencing proceeding he told Harrell in the Marshal's "bullpen" to directly appeal his sentence because the Court did not order his sentence to run concurrent with the sentence in Criminal No. 12-0046-KD from the time he was returned to this District to answer the charges in this case and, instead, only ordered his sentence to run concurrent with the sentence in Criminal No. 12-0046-KD from the date of sentencing (that is, November 14, 2014) and, as well, testified that Harrell told him that an appeal would be taken and to sign the form he was being given, a form which Petitioner signed (but did not read because of his discombobulation over receiving a 106-month sentence) believing it was a Notice of Appeal. The undersigned finds, however, having the benefit of observing Lacey in open court, that his testimony is not credible. Lacey's suggestion that he did not read the form Harrell gave him due to being "discombobulated" regarding his 106-month sentence is belied both by the Petitioner's apparent ability to communicate a detailed basis for an appeal of his sentence[23] and the Court's parting instructions to Lacey, instructions that Lacey specifically stated he understood, that he had 14 days to file a

_____

[22]     During the evidentiary hearing, Lacey verified that the signature on the Notice of No Appeal was his signature and offered additional testimony that the contents of the form he signed were readily understandable to him.

[23]     In other words, if Petitioner, a repeat felony offender, was "discombobulated" (or "stunned") enough by his 106-month sentence to go against his normal custom and not read the form Harrell handed him, it is impossible to believe that Lacey would have been able to articulate the specific and detailed basis for appeal that he claims he communicated to Harrell.

notice of appeal and that he needed to speak with his attorney about his appeal rights and file a Notice of Non-Appeal if he chose not to appeal.

That Lacey could be so discombobulated by his 106-month sentence that he would not read the one-page form Harrell handed him but had the mental facility to articulate a very specific objection he wanted Harrell to assert on appeal simply does not follow from the contents of his sentencing proceeding, a proceeding at which Petitioner: (1) was informed by the Court from the start that he faced a guidelines sentence of 130 to 162 months as to Counts 1 and 2 and a consecutive 24-month sentence as to Count 3; (2) immediately thereafter was notified of the government's motion for downward departure of 48 months from the low end of the guidelines;[24] (3) quickly learned that the government opposed a sentence that would run concurrent with the sentence he was then serving in Criminal No. 12-0046-KD; and (4) when extended the opportunity to address the Court, Petitioner expressed no surprise about the likely length of his sentence[25] and simply requested that "some" of his sentence run concurrent with his sentence in Criminal No. 12-0046-KD,[26] not that he get credit for the time he had been brought to this District, pursuant to a writ, to answer to the underlying criminal charges. In addition, given the content of this Court's final comments and directions to Lacey and the obvious fact that

---

[24]     Again, the Court even performed the math for Lacey (130-48=82 months as to Counts 1 & 2).

[25]     Lacey, of course, faced a sentence he could easily and readily calculate, that is, the downward departure from the low end of the guidelines as to Counts 1 and 2 (82 months) plus the mandatory 24-month consecutive sentence as to Count 3 (82+24=106).

[26]     As previously referenced, the Court granted Petitioner's request that "some" of his sentence run concurrent with the sentence he was then serving in Criminal No. 12-0046-KD by ordering his sentence to run concurrent with the sentence in Criminal No. 12-0046-KD from the date of sentencing (November 14, 2014).

the form Lacey signed after sentencing was a Notice of No Appeal, it is simply not credible that Petitioner did not read the form Harrell handed him or, at the very least, appreciate that it was a Notice of No Appeal. After all, the "Notice of No Appeal" appears in all caps and in bold and underlined print above and as the title to a single, four-sentence paragraph and the other areas Lacey inserted his signature and the date. Thus, the undersigned concludes that Petitioner's testimony that he was so discombobulated by the Court's 106-month sentence that he eschewed his normal practice and did not read the form his attorney handed him in the Marshal's bullpen is entitled to no credit. Indeed, it is clear to the undersigned that Lacey knowingly waived his right to appeal and did not direct Harrell to file a notice of appeal, a conclusion consistent with the ineffective assistance of counsel claim asserted by Petitioner in his initial *pro se* motion to vacate, filed on or about June 29, 2015 (*see* Doc. 246, Attached Memorandum in Support of § 2255 Motion, at 8), and in his complaint filed on this Court's form August 12, 2015 (Doc. 251, at 13), namely, that his attorney provided ineffective assistance in failing "to object to the PSI findings of Double Jeopardy **and [in] advis[ing] petitioner he had no appealable issues to object to at sentencing or on direct appeal**." (*Compare* Doc. 246, Attached Memorandum in Support of § 2255 Motion, at 1 *with* Doc. 261, Attached Memorandum in Support of § 2255 Motion, at 1 (emphasis supplied)). In other words, Lacey's admission in his first two collateral pleadings filed in this Court that Harrell advised him that he had no appealable issues reinforces the conclusion that Harrell did indeed speak to Lacey after sentencing about the advantages and disadvantages of an appeal and that Lacey decided not to appeal his sentence, as the Court's parting instructions directed.

And, finally, the timing relative to Lacey's assertion of the claim that Harrell was constitutionally ineffective in failing to file a notice of appeal persuades the Court that Petitioner did not offer credible testimony during the evidentiary hearing. Lacey's clear testimony on July 23, 2019 was that he waited until a month (or la bit longer) after he learned from the mother of his daughter that she had communicated with Harrell's office and been told that Harrell filed a Notice of Non-Appeal before he filed his motion to vacate. This testimony is clearly spurious because, if true, the lead ineffective assistance of counsel claim raised by Petitioner in his *pro se* pleading on June 29, 2015 and then the follow-up pleading filed on this Court's form motion to vacate filed August 12, 2015, would have been that Harrell was constitutionally deficient in failing to file an appeal as expressly instructed, when, in fact, no such claim was raised in Petitioner's initial two pleadings (*compare* Doc. 246, Attached Memorandum in Support of § 2255 Motion, at 1 *with* Doc. 261, Attached Memorandum in Support of § 2255 Motion, at 1).[27] Thus, the timing of Lacey's assertion of this claim undermines his evidentiary hearing testimony[28].[29]

---

[27]     Indeed, this claim was not raised by Petitioner until October 21, 2015 (Doc. 258), some three months after Lacey initially attacked his counsel's performance.

[28]     The undersigned would also note that Lacey's failure to supply any corroborating evidence, such as the testimony of his mother and his daughter's mother, also detracts from his claim and credibility.

[29]     While Petitioner's counsel argued that his client's hearing testimony was credible because of its consistency with the allegations contained in his motion to vacate, that argument loses its force not only for the reasons previously articulated but also because it is not completely accurate. This is because Petitioner's "statement" in his amended motion to vacate that he called the Eleventh Circuit and was told that no "NOA" had been filed in this case was nowhere voiced during the evidentiary hearing. Of course, had Lacey testified about a purported call to the Eleventh Circuit, such testimony would have further invited the questions of why the appeal issue nowhere appeared in his first two collateral pleadings filed in this Court and why the obviously intelligent Petitioner would not have requested an extension of time to file an appeal and/or filed a motion to file an out-of-time appeal, particularly in light of his demonstrated ability (specifically, in Criminal No. 12-0046-KD) to file a *pro se* notice of appeal.

Lacey's lack of credibility, when combined with the record evidence that Petitioner executed a Notice of No Appeal shortly after a sentencing hearing at which the sentencing judge's final comments to him were that he had 14 days to appeal and he needed to speak with his attorney about his appeal rights and file a Notice of Non-Appeal if he chose not to appeal, demonstrates that Petitioner has not and cannot establish by a preponderance of the evidence that he expressly instructed his attorney to appeal his case. Rather, the undersigned is convinced that Lacey knowingly waived his right to appeal in this matter after being told by Harrell that there existed no appealable issues (*see* Government's Exhibit 1). Therefore, Petitioner is not entitled to take advantage of the presumption in *Garza v. Idaho, supra,* and file an out-of-time appeal. Instead, the undersigned finds that Lacey is not entitled to habeas relief in accordance with 28 U.S.C. § 2255 on the basis of this claim of alleged ineffective assistance of counsel.

In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Lacey's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 on the specific claim that his attorney was constitutionally deficient in failing to file an appeal as expressly instructed.[30] Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge

---

[30] That portion of the Report and Recommendation entered on March 28, 2016 disposing of Petitioner's other two claims raised in his motion to vacate (Doc. 271), which was adopted by the Court on May 2, 2016 (Docs. 272 & 273), remains unchanged.

issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, the claim identified above is being denied on its merits such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). It is recommended that the Court find that reasonable jurists could not debate whether Lacey's § 2255 habeas petition, as it relates to this specific claim of ineffective assistance of counsel, should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability with respect to his claim that his trial attorney was constitutionally ineffective in failing to appeal his sentence as expressly instructed.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that Adrian Lacey is not entitled to habeas corpus relief (specifically, an out-of-time appeal) with respect to his claim that his trial attorney was constitutionally ineffective in failing to file a direct appeal/notice of appeal on his behalf as expressly directed. Petitioner is not entitled to a certificate of appealability with respect to this claim and, therefore, he is not entitled to appeal *in forma pauperis*.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 30th day of July, 2019.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**
